| | | |
|---|---|---|
| *NICHOLE P.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:17-cv-00220-GZS* |
| | ) | |
| *NANCY A. BERRYHILL,* | ) | |
| *Deputy Commissioner for Operations,* | ) | |
| *Performing the Duties and Functions* | ) | |
| *Not Reserved to the Commissioner of* | ) | |
| *Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal

raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff

capable of performing work existing in significant numbers in the national economy.  The plaintiff

seeks remand on the bases that the ALJ erred in evaluating her testimony and relied on a vocational

expert's response to a hypothetical question positing a residual functional capacity ("RFC")

different from that which the ALJ ultimately assessed.  *See* Itemized Statement of Specific Errors

("Statement of Errors") (ECF No. 17) at 7-12.[2]  I find no reversible error and, accordingly,

recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the
plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court
pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon
which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's
Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before
me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions
with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF
No. 19) at 1-2 nn.1-2, the plaintiff raises two points in passing: that the ALJ erred in setting forth her alleged disability
onset date and in finding that she lacked good cause for the late submission of evidence, *see* Statement of Errors at 3-
4.  However, she does not seek remand on the basis of either error or offer reasoned argument concerning them.  *See*

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 11; that she had the severe impairments of peripheral arterial disease, emphysema, bipolar disorder, and a personality disorder with cluster B traits, Finding 3, *id.* at 12; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that, *inter alia*, she could lift and carry 20 pounds occasionally and 10 pounds frequently, sit and stand for a maximum of six hours in an eight-hour workday, was limited to frequent climbing of ramps or stairs, could have no exposure to respiratory irritants, and could respond appropriately to coworkers, supervisors, and usual work situations not involving the public, Finding 5, *id.* at 15; that, considering her age (37 years old, defined as a younger individual on her alleged disability onset date, April 13, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 21; and that she, therefore, had not been disabled from April 13, 2013, through the date of the decision, February 3, 2016, Finding 11, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

---

*id.* at 7-12. Hence, these points of error are waived. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. The ALJ's Assessment of the Plaintiff's Credibility

The ALJ provided several reasons for deeming the plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms "not entirely credible[.]" Record at 17. The plaintiff challenges those pertaining to her alleged walking, breathing, and social difficulties. *See* Statement of Errors at 8-10. For the reasons that follow, I find no reversible error in the ALJ's assessment of those allegations.

Social Security Ruling 96-7p ("96-7p"), which was in effect at the time of the ALJ's decision, provides that a "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 133.[3]

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

I find no basis on which to disturb the credibility determination made in this case.

### 1. Walking Difficulties

The ALJ acknowledged that the plaintiff alleged that, as a result of her peripheral arterial disease, (i) she could not "stand for a long time" and her pain was "constant[,]" (ii) she had "painful and weak legs[,]" (iii) "her hips lock[ed] up to 20 times each day[,]" and (iv) this was "triggered by any pressure on her legs, and in order to treat it she need[ed] to lay down and rest for between 30 and 45 minutes." Record at 16. He further noted that she had alleged difficulty walking up stairs. *See id*. at 17.

Nonetheless, the ALJ observed that Mark E. Bolduc, M.D., had performed exercise testing on March 25, 2013, for a bilateral lower extremity arterial evaluation and "found 'no significant

---

[3] Effective March 28, 2016, SSR 96-7p was superseded by Social Security Ruling 16-3p ("SSR 16-3p"). *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). As the plaintiff recognizes, *see* Statement of Errors at 8, SSR 96-7p applies to the instant decision, which was issued on February 3, 2016, *see* Record at 22.

arterial insufficiency at rest[, and] [m]oderate arterial insufficiency in the right lower extremity with exercise[, with] [n]o significant arterial insufficiency noted on the left.'" *Id.* (quoting *id.* at 293). He added that, although the plaintiff had reported pain and weakness in the right leg and difficulty walking up stairs, she "ambulate[d] without assistance[,] and her record does not contain instances of falls or an antalgic gait." *Id.* "In fact," he noted, "she has been recorded as having 'no difficulty walking.'" *Id.* (quoting *id.* at 699).

He recounted that the plaintiff again underwent an arterial study with exercise on May 6, 2014, following which J. Hendrik Jordaan, M.D., "opined that there was no significant arterial insufficiency in either extremity at rest or with exercise." *Id.* He added:

> These test results were consistent with the ones that Dr. Bolduc had performed a year prior, and in May of 2014 Dr. . . . Bolduc described the [plaintiff] as a "stable peripheral vascular disease patient." He noted that she was "actually doing quite well" and she had "no symptoms whatsoever."

*Id.* (quoting *id.* at 614-15).

The plaintiff argues that, in assessing her allegations of walking difficulties, the ALJ erred in citing evidence that she had no significant arterial insufficiency at rest "while ignoring evidence from the same cited testing and examination reports indicating that [she] was able to perform walking exercise testing for less than two minutes before having to stop due to pain on both occasions of testing in 2013 and 2014." Statement of Errors at 9. She adds that the ALJ improperly relied on a single emergency room record describing her as having no difficulty walking. *See id.* These points are unavailing.

The ALJ properly focused on the conclusions of Drs. Bolduc and Jordaan derived from the objective evidence of the exercise tests. Indeed, the ALJ is tasked with considering "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence[.]" 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-7p at 132 ("In

5

determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including objective medical evidence[.]").

Neither Dr. Bolduc nor Dr. Jordaan indicated that the fact that the plaintiff asked to stop the tests after less than two minutes due to pain invalidated the test results, or ascribed any particular significance to that fact. *See* Record at 293, 757.[4] In addition, agency nonexamining consultant Donald Trumbull, M.D., whose opinion the ALJ gave great weight, found with the benefit of review of the then-available record, updated to include the 2014 exercise testing results, that the plaintiff could stand and/or walk for six hours in an eight-hour workday. *See id*. at 20, 88. 92.

Nor did the ALJ rely solely on a notation in a single emergency room record that the plaintiff had no difficulty walking. He mentioned additional evidence that she ambulated without assistance and that Dr. Bolduc had described her in May 2014 as doing quite well and having no symptoms, as well as noting the absence of evidence of falls or an antalgic gait. *See id*. at 17.

## 2. Breathing Difficulties

The ALJ acknowledged that the plaintiff (i) stated that, as a result of her emphysema, she had trouble breathing, (ii) testified at hearing that, three to four times a day, she felt as though she had "something 'sitting on her chest[,]'" and (iii) stated that she could not change her cats' litterbox because of her breathing trouble and could not be around cleaning products because they irritated her lungs. *Id*. at 16 (quoting *id*. at 40; citing *id.* at 231-32).

He discussed four CT scans, the oldest of which, performed on March 28, 2013, found "'severe underlying emphysema[,]'" and the most recent of which, performed on September 11,

---

[4] Dr. Jordaan noted that, after the plaintiff complained of hip discomfort and requested that the May 6, 2014, study be stopped, "[t]he ankle-brachial index decreased briefly to 0.91 consistent with mild arterial insufficiency, but recovered and normalized." Record at 757.

2013, revealed "'a significant amount of emphysema for a 37-year-old[,]'" although the plaintiff's

"PFT [pulmonary function test] d[id] not s[h]ow tremendously significant obstruction." *Id*. at 17-

18 (quoting *id*. at 284, 486, 490).

> He noted:
>
> Despite the severity shown in the tests described above, the [plaintiff] testified at
> her [h]earing that she uses an Albuterol inhaler four times per day and that it is
> effective in treating her breathing problems. [She] stated that she has no adverse
> side effects from using it. [She] reports that she has given up smoking and that she
> last smoked in August of 2015.

*Id*. at 17 (citing *id*. at 40).

He observed that spirometry tests performed on April 24, 2013, and June 4, 2013, were

normal, that "the [plaintiff]'s record does not contain evidence of prescribed steroids, oxygen

therapy or a breathing machine, or pulmonary rehabilitation[,]" and that, "[o]verall, the [plaintiff]

has been able to successfully manage her emphysema without extensive treatment." *Id*.; *see also*

*id*. at 521, 523. He added that, in determining the plaintiff's RFC, he had taken her condition into

account in "crafting her specific environmental restrictions, as it is the reason for the limit on

exposure to respiratory irritants." *Id*.

> The plaintiff complains that:
>
> The decision does not discuss indications regarding pulmonary testing in April of
> 2013 that "[e]arly termination of effort limits the interpretability of the test" and
> that "[t]he patient gave variable effort and the best tests were shown and were
> acceptable, but were not reproducible." [Record at 521]. Instead, the ALJ's
> decision discusses the associated evidence indicating the testing results *that could
> be obtained* were "within normal limits" in evaluating [the plaintiff's] testimony
> that she has extreme difficulty breathing several times per day and is no longer able
> to tolerate any exposure to cleaning products. [*Id*. at 16, 18]. The ALJ's decision
> is not supported by substantial evidence in this respect.

Statement of Errors at 9-10 (emphasis in original).

As the commissioner rejoins, *see* Opposition at 5-8, for three reasons, this criticism misses the mark.

First, the ALJ discussed not only the April 2013 pulmonary function test but also a June 2013 pulmonary function test that indicated no early termination and showed results that still were within normal limits. *See* Record at 18, 521, 523.

Second, the plaintiff does not challenge all of the reasons given by the ALJ for his assessment of her breathing difficulties, including her own testimony that she was able to manage her symptoms with an inhaler. *See id.* at 18, 40; *Little v. Colvin*, No. 2:13-CV-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014) (ALJ's analysis "easily survive[d] the applicable, deferential standard of review" when claimant did not challenge all relevant credibility findings and those he did challenge withstood scrutiny).

Finally, the plaintiff fails to demonstrate that the asserted error matters. In consideration of the plaintiff's emphysema, the ALJ assessed a restriction against exposure to respiratory irritants. *See* Record at 18. The plaintiff identifies no additional restrictions that, in her view, he should have assessed to account for her breathing difficulties. *See* Statement of Errors at 9-10; *Coffin v. Berryhill*, No. 2:17-cv-00176-DBH, 2018 WL 1135560, at *5 (D. Me. Mar. 2, 2018) (rec. dec., *aff'd* Apr. 2, 2018) (remand unwarranted when, even assuming error in ALJ's assessment of the combined effects of claimant's impairments, claimant failed "to demonstrate how any such error resulted in the omission of specific functional limitations from the ALJ's RFC finding").

### 3. Social Difficulties

The ALJ acknowledged that the plaintiff alleged that (i) she could have a hard time getting along with others, depending on who the person was or the topic of conversation, (ii) she did not handle stress well and "let[] herself 'be bothered to a blowing up point[,]'" and, (iii) as a result of

8

her personality disorder, 'changes into a different person'" and is "very defensive" and "very argumentative" between eight and 10 times a month. Record at 16-17 (quoting *id*. at 43, 237).

However, he found that, while the record indicated that the plaintiff had "a highly stressful relationship with one individual in her life – namely, [her] mother in law" – it "contain[ed] no indication that [her] personality disorder affect[ed] her interpersonal relationships generally." *Id*. at 19. He elaborated:

> One of the [plaintiff]'s daughters has attended appointments with [her], and the [plaintiff] reports having a strong connection with her grandson. The [plaintiff']s record does not contain instances of aggressive behavior or wanton disregard for the safety of herself or others. In addition, there is no indication of suicidal behavior or threats of self-harm or an indication of a failure to recognize the needs and feelings of others. Put another way, the [plaintiff] has a difficult relationship with a single family member, but exhibits the ability to maintain normal and healthy relationships generally, despite her personality disorder. Finally, the undersigned notes that the [plaintiff]'s mental problems, taken together, have been considered when crafting the RFC and are the reason for the restriction against working with the public.

*Id*.

The plaintiff points out that the ALJ erred in characterizing the record as devoid of "'instances of aggressive behavior or wanton disregard for the safety of herself or others[,]'" citing a record of a July 2014 emergency room visit after she punched a wall for no apparent reason. Statement of Errors at 10 (quoting Record at 19; citing *id*. at 741-44).

The commissioner acknowledges the oversight, but persuasively argues that, for several reasons, the error is harmless. *See* Opposition at 9.

First, the plaintiff challenges only one of multiple reasons for the ALJ's credibility finding regarding her alleged social difficulties. *See* Record at 19; Statement of Errors at 10; *Allen v. Astrue*, No. 2:10-cv-35-DBH, 2010 WL 5452123, at *2 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 18, 2011) ("Even assuming *arguendo* that the [ALJ] erred in certain of the cited respects, her thorough and detailed credibility analysis remains supported by specific findings and, hence,

entitled to deference."). Second, the plaintiff identifies no functional restrictions omitted as a result

of the error. *See* Statement of Errors at 10; *Coffin*, 2018 WL 1135560, at *5. Finally, even

assuming *arguendo* that the ALJ's assessed limitation against working with the public was

underinclusive, the error is harmless, the ALJ having relied at Step 5 on the plaintiff's ability to

perform the job of marker, with respect to which "People" are "not significant[,]" according to the

*Dictionary of Occupational Titles* ("DOT"). *See* DOT § 209.587-034 (U.S. Dep't of Labor 4th ed.

1991).

### B. The Hypothetical Presented to the Vocational Expert

The ALJ posed the following hypothetical to the vocational expert ("VE") at the hearing:

> A younger individual with a GED [General Educational Development] with this
> past relevant record of this [plaintiff] capable of light work with frequent ability to
> climb ropes, or scaffolds, balance, stoop, kneel, and crouch, and no respiratory
> irritants who, on a sustained competitive basis could understand or remember
> simple instructions, use judgment in making simple work-related decisions,
> respond appropriately to coworkers, supervisors, and usual work situations not
> involving the public, and can adapt to changes in the ordinary work setting. Would
> that – would that hypothetical significantly erode the unskilled, light occupational
> – occupational base?

Record at 36. The VE responded that an individual with those limitations retained the ability to

perform about 93 percent of light work in the national economy, including the job of marker. *See*

*id*. at 36-37.

The plaintiff asserts that the ALJ's reliance on this vocational testimony was misplaced

because, ultimately, he assessed an RFC that varied in some respects from the hypothetical

question he had posed to the VE. *See* Statement of Errors at 10-12; *see also, e.g.*, *Arocho v. Sec'y*

*of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are

relevant only to the extent offered in response to hypothetical questions that correspond to the

medical evidence of record).

Specifically, she notes that, in determining her RFC, the ALJ omitted a limitation posed to the VE (that she could frequently climb ropes and scaffolds) and added a limitation not posed to the VE (that she could sit or stand for a maximum of six hours in an eight-hour workday). *See id*. 11. She adds that the ALJ failed to make clear, either to the VE or in his RFC determination, the extent to which he found she could walk. *See id*. at 12.

This basis for remand also proves unavailing.

First, the omission from the ALJ's RFC determination of the limitation to frequent climbing of ropes or scaffolds is harmless error. The ALJ included a similar climbing limitation, albeit a limitation to "frequent climbing of ramps or stairs[.]" Finding 5, Record at 15. Second, and in any event, the marker job relied on at Step 5 by the VE does not require any climbing activity. *See* DOT § 209.587-034; *Dixson v. Colvin*, No. 2:13-cv-165-GZS, 2014 WL 1569530, at *5 (D. Me. Apr. 18, 2014) (ALJ's error in not including an environmental limitation against exposure to extreme cold in his hypothetical question to the VE was harmless when job identified by the VE did not entail any such exposure).

Second, in asking the VE to assume an individual "capable of light work[,]" Record at 36, the ALJ implied, consistent with his later RFC determination, that the individual could stand or walk for six hours in an eight-hour workday and sit most of the time, *see* Social Security Ruling 83-10 ("SSR 83-10"), reprinted in *West's Social Security Rulings Service* Rulings 1983-1991, at 29 (a job is in the light work category "when it requires a good deal of walking or standing" or "involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls"; "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

Third, and finally, to the extent that the plaintiff relies on the asserted severe limitation in working caused by her limitations in walking, *see* Statement of Errors at 12, for the reasons discussed above, the ALJ properly discounted her subjective allegations on that point.

Remand is, accordingly, unwarranted on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge